[No. G025371. Fourth Dist., Div. Three. Sept. 6, 2001.]

ANGELA MORAN, Plaintiff and Appellant, v.
OSO VALLEY GREENBELT ASSOCIATION, Defendant and
Respondent.

**COUNSEL**

Neuland, Nordberg & Andrews, Richard P. Neuland and Frederick T. Whitney for Plaintiff and Appellant.

Lee & Mellenger and Richard E. Mellenger for Defendant and Respondent.

## OPINION

**MOORE, J.**—Angela Moran sued the Oso Valley Greenbelt Association (Association) for failure to produce the Association's minutes for inspection. Although the court found the board of directors' meeting minutes had been "wrongfully" withheld and ordered the minutes produced, the court declined to award Moran her attorney fees and costs pursuant to Corporations Code section 8337. Moran appeals this decision, arguing that without reimbursement of attorney fees and costs, she has suffered a pyrrhic victory. The Association argues the court did not abuse its discretion, because, inter alia, the delay was reasonable and mostly attributable to Moran. We disagree with this conclusion, because once the court concluded the Association acted "wrongfully," denying attorney fees and costs without further explanation was an abuse of discretion. We therefore reverse and remand.

I

### FACTS

Angela Moran is a member of the Association, a common interest development under the jurisdiction of the Davis-Stirling Common Interest Development Act. (Civ. Code, § 1350 et seq.) In October 1998, Moran sent a letter to the Association's management company, CC&R Management, asking for the Association to contact her "to schedule a convenient time" to review the board of directors' meeting minutes.

The parties sharply dispute the events that followed regarding who responded to letters and who did not, and whose phone calls were returned or ignored. Suffice it to say that each blames the other for the failure to resolve this dispute at its early stages, and attorneys became involved. The parties also questioned each other's motives. Moran was a paralegal employed by the attorneys representing her, Neuland, Nordberg & Andrews, and the Association suspected she was seeking the minutes on behalf of the law firm rather than in her interest as a member. Moran believed that the Association might not be keeping proper records or was actively hiding them to conceal some impropriety.

By December 1998, Moran had yet to review the minutes. Based upon what they believed was a scheduled appointment, Moran and her counsel drove 45 minutes to CC&R Management's offices and were told their

appointment was for the following week, and they could not review the minutes that day. Shortly thereafter, Moran filed an application for an order compelling production of the minutes and attorney fees and costs.

While the application was pending, the parties continued to communicate regarding an informal resolution. The Association claimed that some of the minutes Moran wished to review (going back approximately 10 years) were "scattered throughout approximately 140 storage boxes" and "not in any particular order." The Association claimed it was prepared to turn over the minutes in late December, but intended to charge Moran $200 for "eight hours of the Management Company's time to retrieve the documents at $25.00 per hour" in addition to $35.50 in photocopy costs at 25 cents per page. Moran's counsel responded that the Association did not have the right to charge for the management company's time and suggested the question of the $200 be reserved for the court. Moran's counsel requested production of the minutes upon payment of the $35.50 copy charge, but the Association's counsel refused.

Moran retained an expert, Karen Bennett, who provided testimony on the custom and practice of the homeowner association industry. She testified, inter alia, that management companies keep minutes readily available in order to provide the prompt review required by the Civil Code and Corporations Code, and it would be improper to charge members for the costs of storing and retrieving the minutes. The Association did not provide testimony contradicting Bennett, and although it objected to what it characterized as Bennett's "legal conclusions" it did not object to her statements regarding industry custom and practice.

In March 1999, the court heard Moran's petition. After hearing oral argument, the court ruled from the bench: "Each side's blaming the other for the delays. [I]t's not really up to me to really resolve that. It's a little difficult to resolve. [¶] . . . [¶] So the order of the court is an order compelling performance; that is, inspection of books and records. [¶] However, attorney's fees for either side will be denied; and costs for a person's time for going through the records will be denied. . . . All that they are going to get out of it are the costs of copying and postage. . . ." Thus, the court found the Association was not entitled to charge $200 for compiling the minutes. The written order reflects the ruling from the bench, stating the Association "shall produce the minutes it wrongfully withheld upon payment by Petitioner of the reasonable costs associated with making the copies requested."

## II

### DISCUSSION

Civil Code section 1363, subdivision (f), provides that members of community associations "shall have access to association records" in accordance with Corporations Code section 8330 et seq. Corporations Code section 8333 states, "The . . . minutes of proceedings of the members and the board . . . shall be open to inspection upon the written demand on the corporation of any member at any reasonable time, for a purpose reasonably related to such person's interests as a member."

■ Corporations Code section 8337 provides, "In any action or proceeding under this article . . . if the court finds the failure of the corporation to comply with a proper demand thereunder was without justification, the court may award the member reasonable costs and expenses, including reasonable attorneys' fees, in connection with such action or proceeding."

Thus, the trial court has discretion to award attorney fees and costs. We will not disturb the trial court's decision absent an abuse of that discretion. (See *Adoption of D. S. C.* (1979) 93 Cal.App.3d 14, 24-25 [155 Cal.Rptr. 406].) The trial court's discretion, however, is not absolute: "The discretion intended, however, is not a capricious or arbitrary discretion, but an impartial discretion, guided and controlled in its exercise by fixed legal principles. It is not a mental discretion, to be exercised *ex gratia*, but a legal discretion, to be exercised in conformity with the spirit of the law and in a manner to subserve and not to impede or defeat the ends of substantial justice." (*Bailey v. Taaffe* (1866) 29 Cal. 422, 424.) An exercise of discretion is subject to reversal on appeal where no reasonable basis for the action is shown. (*Common Cause v. Stirling* (1983) 147 Cal.App.3d 518, 522 [195 Cal.Rptr. 163].)

■ Here, we are faced with a compelling inconsistency: the trial court's order stated the Association "wrongfully" withheld the minutes and correctly rejected the Association's argument that it was entitled to recover $200 beyond the cost of providing photocopies. This conclusion was amply supported by the facts, including the length of the delay, the aborted meeting at the management company's office, the Association's intransigent demand for the $200 fee prior to providing copies of the minutes, and the uncontradicted expert testimony rejecting the Association's recordkeeping practices as aberrant and outside industry norms.

Yet the court also, without explaining its decision either on the record or in its order, denied Moran recovery of attorney fees and costs. Although

Corporations Code section 8337 does not require a written order explaining the court's decision, without any explanation of its reasoning, we cannot conclude this aspect of the court's decision had any reasonable basis. Perhaps the court did have a sound rationale, but we simply cannot reach this conclusion based on the order and the reporter's transcript of the court's decision. The decision is therefore subject to reversal.

We do not hold that every litigant prevailing under Corporations Code section 8337 is entitled to an award of attorney fees and costs; the statute says "may" rather than "shall" and that is what it means. We do, however, encourage the trial court to consider all of the facts of a particular case and articulate its reasons (either on the record in open court or in a written order) for granting or denying such an award. In *Common Cause v. Stirling* (1981) 119 Cal.App.3d 658, 665 [174 Cal.Rptr. 200], the Court of Appeal reviewed the standards for awarding attorney fees under the Brown Act, which, like Corporations Code section 8337, includes a discretionary attorney fees provision. We find its guidance to the trial court useful and adopt it here: "A court must . . . examin[e] all the circumstances of a given case to determine whether awarding fees under the statute would be unjust with the burden of showing such inequity resting on the defendant. . . . Without limitation, some other considerations which the court should weigh in exercising its discretion include the necessity for the lawsuit, . . . the likelihood the problem would have been solved by other means and the likelihood of recurrence of the unlawful act in the absence of the lawsuit." (*Common Cause, supra* at p. 665.)

### III

### DISPOSITION

The judgment is reversed and the case remanded for the trial court to consider the suitability of an award of attorney fees and costs in light of the principles stated above. Moran is entitled to recover her costs on appeal.

Rylaarsdam, Acting P. J., and Aronson, J.,* concurred.

---

*Judge of the Orange Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.